UNITED STATES, Appellee,

v.

Lieutenant Colonel Leonard C. SCHU-
MACHER, SSN 295–32–0025, United
States Army, Appellant.

CM 439086.

U. S. Army Court of Military Review.

22 April 1981.

Captain John P. Galligan, JAGC, argued the cause for appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, and Major Robert B. Williams, JAGC.

Terrence L. Lewis, Esquire, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Charles A. Byler, JAGC.

Before MITCHELL, DRIBBEN and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

WATKINS, Judge:

Tried by a general court-material comprised of officer members, the appellant, contrary to his pleas, was convicted of unauthorized absence from his place of duty (five specifications); conduct unbecoming an officer and a gentleman, *viz.* drunk in a public place while in uniform (two specifications); drunk while on duty; and incapacitation for the proper performance of his duties as a result of previous indulgence in intoxicating liquor.[1] The sentence, to dismissal from the service, was approved by the convening authority. The case is before this Court for mandatory review pursuant to Article 66(b), Uniform Code of Military Justice, 10 U.S.C. § 866(b) (1976). The appellant is a Regular Army Officer, in the grade of Lieutenant Colonel, Army of the United States. He had completed more than 18 years of service at the time of the alleged offenses, and slightly more than 19 when this case was tried during the period 23 August–5 October 1979.

In the language of the appellate pleadings, the appellant alleges error as follows: the facts concerning Specifications 1 and 2 of Charge IV (drunk in a public place while in uniform) are insufficient to sustain a conviction as a matter of law; the military judge failed to properly advise the court as to the legal requirements for a finding of guilty of Specifications 1 and 2 of Charge IV; the military judge erred to the substantial prejudice of the appellant by failing to instruct the members on the law of involuntary intoxication; and the evidence of record shows beyond a reasonable doubt that the appellant, due to involuntary intoxication, did not have the substantial capacity to conform his conduct to the requirements of law and adhere to the right. The appellant also argues that the sentence is disproportionately severe in light of his extensive military service and what is termed the inherent regressive aspects of the disease of alcoholism.

## I

Concerning the evidentiary sufficiency of the record to support the findings of guilty of the Article 133 specifications (drunk in a public place while in uniform), we find that this assignment of error is devoid of merit. The first of these specifications alleged that the appellant was, at San Antonio, Texas, on or about 1345 hours, 16 February 1979, in a public place, to wit: Interregional

---

1. Violations of Articles 86, 133, 112, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 933, 912, and 934 (1976), respectively. Additional charges of disobedience of a lawful order and drunk driving (two specifications) were dismissed by the military judge upon defense motion.

Highway Number 35 and O'Connor Road, drunk while in uniform, to the disgrace of the armed forces. The latter specification was identical to the former one, except that the time of the offense was alleged as 1320 hours, 2 March 1979, and the location as Interregional Highway Number 35 and Walzam Road.

The competent evidence of record discloses that at the alleged time and place on 16 February 1979, two officers of the San Antonio Police Department were directed to the intersection of Highway 35 and O'Connor Road where they encountered the appellant in full military attire (the Army green uniform), one foot in and one foot out of his automobile, attempting to restart the motor. The vehicle had come to a stop in the middle of the entrance ramp to the "freeway," and both left tires were flat (ostensibly as a result of a collision with the curb). Two private citizens were directing traffic around the disabled automobile. The appellant smelled strongly of an intoxicant, spoke with slurred speech, and had "bloodshot" eyes. Testimony from a noncommissioned officer assigned to the San Antonio Armed Forces Police Detachment indicated that the appellant was intoxicated and had trouble walking when he was released from custody at the Bexar County Jail some two hours later.

With respect to the second specification, the evidence reveals that at the alleged time and place on 2 March 1979, a patrolman assigned to the San Antonio Police Department observed the appellant, again in military uniform, driving a pickup truck, which had a flat right-front tire, southbound in the northbound lane of the access road along Interregional Highway 35. "Quite a lot of traffic congestion" resulted from the operation of the vehicle "against the flow of traffic." Several people "honked" and pointed in the direction of the appellant and, shortly thereafter, witnessed his arrest by the police officer. At that juncture, the appellant fumbled through his wallet for his driver's license, needed support to stand, was disoriented as to space and time, and had slurred speech and "bloodshot" eyes.

■ Even assuming, arguendo, that the appellant is correct in asserting that a more aggravated form of drunkenness must be established in order to support a conviction under Article 133, UCMJ,[2] we entertain no doubt concerning the sufficiency of the evidence. In each instance, the appellant's public drunkenness was accompanied by notorious ancillary misconduct which reasonably could not, and as a factual matter did not, escape the attention of civilian law enforcement authorities and other motorists and passersby. We conclude that the evidence is more than sufficient to establish beyond a reasonable doubt that the appellant's conduct on these two occasions was unbecoming and disgraceful in the sense of this punitive statute.

## II

In a closely related assignment of error, the appellant argues that the standard instructions given by the military judge concerning the elements of proof of the unbecoming conduct offenses alleged under Article 133, UCMJ, 10 U.S.C. § 933 (1976), were deficient in light of early case law (such as that typified by *United States v. Clarke*, 3 C.M.R. 227 (ABR 1952)), in that something more than public drunkenness must be established in order to make out a criminal offense under this particular punitive article of the Uniform Code.[3]

See generally *United States v. Mallory*, 17 C.M.R. 409 (A.B.R. 1954); *United States v. Clarke*, 3 C.M.R. 227 (A.B.R. 1952); Winthrop, Military Law and Precedents, 717 (2d ed. 1920 reprint).

2. The essence of the appellant's argument on this issue is that whereas the trial judge's instructions regarding public drunkenness may have been appropriate for offenses alleged under Article 134, UCMJ, 10 U.S.C. § 934 (1976) (the General Article), they were deficient with respect to the specifications alleged under Article 133; UCMJ, 10 U.S.C. § 933 (1976), in that they countenanced a lesser standard of drunkenness than that required by early case law.

3. As correctly noted by appellate counsel for the Goverment, the case relied upon by the appellant, United States v. Clarke, *supra*, does not address the issue of instructional sufficien-

In the context of the formal allegations, each of which specified that the appellant, at a particular time and in a designated public place, was drunk while in uniform to the disgrace of the armed forces, the trial judge in each instance recited the standard elements of proof, including the one unique to specifications pleaded under Article 133, UCMJ, that, under the circumstances, the accused's conduct was unbecoming an officer and a gentleman.[4] Additionally, the military judge provided detailed guidance regarding the legal denotation of the terms "public place" and "drunkenness." When afforded the opportunity to object to the judge's instructions on findings or to propose additional ones, the trial defense counsel declined without additional comment. Whereas the trial judge has the primary responsibility for properly advising the members as to the law,[5] the trial defense counsel retains the burden of seeking clarification of instructions which are unclear, imprecise, or ambiguous. *United States v. Salley*, 9 M.J. 189, 193 (C.M.A. 1980). Moreover, the failure of the defense to enter a timely objection to faulty findings instructions was recently held to be dispositive of the appellate issue of the legal sufficiency of those instructions. *See United States v. Carmans*, 10 M.J. 50 (C.M.A. 1980); *United States v. Cross*, 10 M.J. 34 (C.M.A. 1980). In view of the foregoing, and the competent evidence of record which in our opinion overwhelmingly establishes the appellant's guilt of the Article 133 offenses (Charge IV and its specifications), we hold that this assignment of error is without merit.

### III

The appellant also alleges that he has suffered substantial prejudice in that the military judge did not instruct on involuntary intoxication. We understand the thrust of appellant's contention to be that, because of the considerable evidence of record indicating that the appellant was an alcoholic at the time of the alleged offenses,[6] an instruction on involuntary intoxication would have been appropriate on the theory that his consumption of alcoholic beverages was in effect compelled by so-called "unconscious factors" which overcame his diminished ability to resist. The legal propriety of an instruction on involuntary intoxication was considered at a sidebar conference in conjunction with the trial judge's instructions on findings. The military judge observed that the evidence before the court indicated that the commencement of drinking was attributable to voluntary acts on the part of the accused; consequently, the judge determined that an instruction on lack of mental responsibility (resulting from the accused's alcoholism) was warranted by the evidence but not one on involuntary intoxication. The trial defense counsel acquiesced in this determination and neither expressed a contrary view of the evidence nor requested additional instructions. As noted above, silence on the part of the defense advocate under such circumstances can have far-reaching legal significance. *See United States v. Carmans, supra; United States v. Cross, supra.* Moreover, the military judge, apparently out of an abundance of caution, instructed *sua sponte* on the defense of physical impossibility (the physical impossibility of refraining from becoming intoxicated).

Based upon an independent review of the entire record, we perceive no instructional error.

---

cy; rather it relates to the matter of sufficiency of the evidence.

4. The instructions were virtually identical to those found in paragraph 4–123, *Department of the Army Pamphlet 27–9, Military Judges' Guide*, Change 1 (22 October 1969), relating to the Article 133, UCMJ, offense of Drunk (or Disorderly, or both).

5. *See generally* Article 51(c), UCMJ, 10 U.S.C. § 851(c) (1976); paragraph 73, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Grunden*, 2 M.J. 116 (C.M.A. 1977); *United States v. Graves*, 1 M.J. 50 (C.M.A. 1975).

6. Documentary evidence introduced by the appellant indicated that he had been diagnosed as an alcohol addict, chronic, severe (improved) and that there was evidence of cerebral atrophy, chronic, mild (no treatment necessary).

Intoxication has ordinarily been considered voluntary if it was the natural and reasonably foreseeable outcome of an accused's voluntary conduct, although this is not the only situation in which intoxication will be considered voluntary. And, as a general proposition, past experience with the intoxicant, or other information which puts the accused on notice that he will suffer a violent intoxicating reaction from a particular intoxicant, has ordinarily been considered sufficient to treat the intoxication as voluntary.

Annot., 73 A.L.R.3d 195, 203 (1976). The evidence in this case reveals that the appellant normally drank by himself in the privacy of his own home. His history of alcohol addiction, detoxication, and treatment indicates that the consequences of taking the first drink, and succeeding ones, were well known to him. There is no evidence that the appellant's intoxication was in any way associated with mistake or ignorance on his part or with coercion or fraud on the part of another person. Accordingly, the trial judge's election to treat the matter as one of voluntary intoxication was fully supported by the evidence and was not erroneous.

## IV

■ On appeal, the appellant also seeks to relitigate the mental responsibility issue, specifically whether at the time of the alleged offenses he possessed the substantial capacity to conform his conduct to the requirements of law and adhere to the right. Our review of the record discloses no basis for disturbing the conclusion of the trial court; in the exercise of our independent fact-finding authority under Article 66(c), UCMJ, 10 U.S.C. §§ 866(c) (1976), we likewise find the requisite mental responsibility beyond a reasonable doubt.[7]

7. Subsequent to the preferral of charges in this case, Medical Board Proceedings were conducted according to the guidelines of paragraph 121, Manual for Courts-Martial, United States, 1969 (Revised edition), and *United States v. Frederick*, 3 M.J. 230 (C.M.A. 1977). The Board unanimously found that the appellant: (1) at the time of the alleged offenses had no disease or defect; (2) at the time of the alleged offenses did not lack substantial capacity to appreciate the criminality of his conduct; (3) at

## V

The final appellate issue in this case relates to the appropriateness of the approved sentence. In support of his argument that the sentence is excessive, the appellant points to several factors which in his view adequately explain the commission of the offenses or constitute a proper basis for lessening the approved punishment. *See generally* paragraph 75c, Manual for Courts-Martial, United States, 1969 (Revised edition). Among those advanced in extenuation, the appellant observes that all of the offenses of which he was convicted were relatively "minor" in nature, that all of them were connected with the disease of alcoholism, and that any recidivism or failure to respond to treatment was attributable to the inherent regressive aspects of that disease. The principal mitigating factors relate to the appellant's prior record of military service. He has served on active duty as a commissioned officer in the Medical Service Corps since August 1960, is a graduate of the Command and General Staff College, and in the past has received several letters of appreciation and commendation and, at least until July, 1977, outstanding efficiency reports.

Concerning appellate action with respect to the sentence, this Court's statutory charter provides that only such part or amount of the sentence as is correct in law and fact may be affirmed. This determination must be made on the basis of the entire record and with an awareness that the trial court saw and heard the witnesses.[8]

■ It is clear that this Court, in appropriate circumstances, has the power to lessen the rigor of a legal sentence. *See gener-*

the time of the alleged offenses did not lack substantial capacity to conform his conduct to the requirements of law; and (4) possessed sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense.

8. Article 66(c), UCMJ; 10 U.S.C. § 866(c) (1976).

*ally* Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1976); *United States v. Prow*, 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962); *United States v. Johnson*, 12 U.S.C.M.A. 640, 31 C.M.R. 226 (1962); *United States v. Russo*, 11 U.S.C.M.A. 352, 29 C.M.R. 168 (1960); *United States v. Lanford*, 6 U.S.C.M.A. 371, 20 C.M.R. 87 (1955); *United States v. Cavallaro*, 3 U.S.C.M.A. 653, 14 C.M.R. 71 (1954). We construe these cases, and subsequent ones such as *United States v. Talty*, 17 U.S.C.M.A. 491, 38 C.M.R. 289 (1968), and *United States v. Finlay*, 6 M.J. 727 (A.C.M.R. 1978), to stand for the proposition that a reduction in the approved sentence should be predicated upon an appellate determination that the sentence is inappropriate in the context of the entire record.

■ The sentence in this case, which provided for dismissal from the service, appears to have been carefully tailored to the facts and circumstances surrounding the commission of the offenses.[9] Potential elements of punishment relating to deprivation of freedom and forfeiture or detention of pay were conspicuously omitted. Moreover, the termination of Federal military status appears entirely consistent with that

evidence, presented by the defense, that the appellant was initially diagnosed as an alcoholic in February, 1978; that his security clearance was withdrawn well in advance of the commission of the instant offenses; and that a medical determination reached just prior to the commencement of the trial indicated that further rehabilitative treatment on an in-patient basis was not indicated.[10] Following a detailed review of the entire record with particular attention to the facts and circumstances surrounding the commission of the offenses of which the appellant was convicted, we conclude that as a judicial matter the findings of guilty and the sentence are legally correct and appropriate. Accordingly, they are affirmed.

Senior Judge MITCHELL and Judge DRIBBEN concur.

---

9. The maximum authorized punishment for the offenses of which the appellant was convicted was dismissal, confinement at hard labor for 23 months, and forfeiture of all pay and allowances.

10. *Cf. United States v. Means*, 10 M.J. 162, 166 (C.M.A. 1981) (In view of the special status accorded a commissioned officer within the military hierarchy, it is not unreasonable that he be held to a high standard of accountability).